Julie **TREMPER** and DaShawn Johnson, Individually and on Behalf of Destiny Johnson, an infant, as Next Friend, Plaintiffs,

v.

**ULSTER COUNTY DEPARTMENT OF PROBATION;** Michelle Marsilio, Probation Officer; and Robert Sudlow, Director; Defendants.

No. 01–CV–1125.

United States District Court, N.D. New York.

Aug. 22, 2001.

---

Getman & Selcov, LLP, Attorneys for Plaintiffs, New Paltz, NY, Robert Selcov, Esq., of counsel.

Office of James H. Kerr, Attorneys for Defendants, New Paltz, NY, Marsha S. Weiss, Esq., of counsel.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I.  INTRODUCTION

An Order to Show Cause and Temporary Restraining Order issued on July 24,

2001, enjoining defendants from enforcing a condition of probation against plaintiff Julie Tremper ("Tremper") that restricts her ability to have contact with plaintiff DaShawn Johnson ("Johnson"). Plaintiffs seek a preliminary injunction affording them the same relief. Plaintiffs submitted affidavits of Tremper and Johnson in support of their motion. Defendants opposed and submitted the affidavit of Michele Marsilio, a probation officer, in opposition. Plaintiffs submitted an additional affidavit by Tremper in reply. Neither party has requested an evidentiary hearing.

Oral argument was heard on August 15, 2001, in Utica, New York. The Temporary Restraining Order was continued in effect pending the decision herein. Additionally, the parties were ordered to immediately notify the court if Johnson was incarcerated or if any modification of the terms of Tremper's probation occurred.

## II. BACKGROUND

Tremper and Johnson have a child together, Destiny Johnson. The three have lived together as a family for the last two and one-half years, less times when Johnson was incarcerated or when they lived apart temporarily due to changing apartments.

Tremper was arrested on June 22, 2000, on a weapons possession charge. On April 5, 2001, she pled guilty to fourth degree criminal possession of a weapon, a .45 caliber Ruger handgun. Tremper admitted that she had purchased the weapon in West Virginia, before her involvement with Johnson, and had transported it to New York State.

The weapon had been discovered during an unannounced home visit by Johnson's probation officers. Possession of a weapon was a violation of Johnson's probation, and he was subsequently sentenced to ten months imprisonment for that violation. That term of imprisonment has been served. Johnson appears to have a lengthy criminal record, and this was not his first probation violation. Further, a menacing charge is currently pending against him.

Subsequent to Tremper's guilty plea, the defendant Ulster County Department of Probation ("Probation Department") conducted a presentence investigation report on her and, although this was her first offense, recommended incarceration. In the event the court opted not to follow the recommendation, an Order and Conditions of Probation was provided by the Probation Department. In addition to standard terms of probation, the proposed Order included a special condition: that Tremper refrain from contact with Johnson.[1]

Tremper was sentenced on May 31, 2001. The sentencing court did not follow the Probation Department's recommendation for incarceration. Rather, it placed Tremper on one year interim probation. Under the terms of interim probation, Tremper's sentencing was adjourned for one year, until May 31, 2002, at which time the court could dismiss the charge, sentence her to incarceration, sentence her to a term of probation, or take other action. The sentencing court signed the Order and Conditions of Probation as proposed by the Probation Department. Tremper also signed, indicating her agreement to abide by its terms. According to Tremper, the first time she became aware that a condition of her probation would be to refrain from contact with Johnson was at the time of her sentencing.

---

1. The special condition requires "[n]o contact with DaShawn Johnson with the exception of matters pertaining to their mutual child and/or the exchange of the child at visitation." (Marsilio Aff. Ex. B.)

This action followed, alleging that the special condition of probation imposed upon Tremper "violates plaintiffs' privacy and associational rights under principles of substantive due process under the First, Fourth, Ninth and Fourteenth Amendments to the Constitution of the United States." (Am.Compl.¶ 23.) Plaintiffs seek declaratory and injunctive relief; compensatory and punitive damages; and costs and attorneys fees.

## III. *DISCUSSION*

### A. Preliminary Injunction Standard

A preliminary injunction should issue only where the party seeking such relief shows "that it is likely to suffer irreparable injury if relief is denied [and] also that there is either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [movant's] favor." *Procter & Gamble Co. v. Chesebrough–Pond's Inc.,* 747 F.2d 114, 118 (2d Cir.1984); *Otokoyama Co. v. Wine of Japan Import, Inc.,* 175 F.3d 266, 270 (2d Cir.1999); *Eng v. Smith,* 849 F.2d 80, 81–82 (2d Cir.1988); *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir.1985). Where " 'a preliminary injunction seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the less rigorous fair-ground-for-litigation standard should not be applied.' " *Brown v. Giuliani,* 158 F.R.D. 251, 264 (E.D.N.Y.1994)(quoting *Sweeney v. Bane,* 996 F.2d 1384, 1388 (2d Cir.1993)(internal quotation omitted)).

Irreparable harm must be imminent, not remote or speculative. *Id.* at 264 (citing *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989)). Where monetary damages cannot compensate for the injury, the harm is irreparable. *Id.* (citing *Studebaker Corp. v. Gittlin,* 360 F.2d 692, 698 (2d Cir.1966)).

In order to establish a likelihood of success on the merits, movants must show that their chance of prevailing is greater than fifty percent. *Abdul Wali,* 754 F.2d at 1025. "[C]onsiderable room for doubt" may remain. *Id.* A greater showing is required, however, where the injunction is mandatory rather than prohibitory. *Eng,* 849 F.2d at 82 (citing *Abdul Wali,* 754 F.2d at 1025). Where the relief sought is mandatory, a "clear showing that the moving party is entitled to the relief requested" must be made. *Abdul Wali,* 754 F.2d at 1025 (internal quotation omitted); *Eng,* 849 F.2d at 82. Additionally, where a preliminary injunction grants substantially all of the relief sought, a substantial likelihood of success on the merits must be established. *Abdul Wali,* 754 F.2d at 1026; *see Eng,* 849 F.2d at 82.

### B. Analysis

Plaintiffs argue that the challenged condition of probation imposed upon Tremper violates their constitutional rights, specifically the right of Tremper and Johnson to participate in the care, custody and management of their natural child, their right to live together as a family, and the right of their child to live together with her natural parents. On the other hand, defendants contend that the challenged condition is reasonably related to the punitive and rehabilitative goals of probation and therefore is permitted pursuant to New York Penal Law § 65.10(2).

Defendants do not dispute that following the challenged condition of probation will cause plaintiffs irreparable harm. In fact, it is clear that prohibiting the plaintiffs from living together as a family will cause injury that cannot be compensated by a damage award, establishing the irrepara-

ble harm prong required for preliminary injunctive relief.

In contention is whether plaintiffs have established the likelihood of success on the merits prong. As an initial matter, defendants argue that the proper standard is substantial likelihood of success, because preliminary injunctive relief will constitute substantially all of the relief sought. This is so, defendants argue, because the full relief sought will be moot when Tremper's probation ends on May 31, 2002. Defendants' argument must fail. First, defendants' argument assumes that full relief will not be attainable before May 31, 2002, which is pure conjecture. Second, in addition to injunctive relief, plaintiffs seek declaratory relief, compensatory damages, and punitive damages. Third, and perhaps most importantly, when Tremper's interim probation ends on May 31, 2002, the sentencing court has the option of imposing a term of probation, or incarceration followed by probation, such that the injunctive relief sought herein would not be moot. Moreover, it is unnecessary to decide this question since, as will be seen, even under the heightened standard plaintiffs have shown a likelihood of success on the merits.

■ Defendants argue that pursuant to the New York penal law, a condition of probation is permissible so long as it is rationally and reasonably related to the goal of rehabilitation. *See* N.Y. Penal Law § 65.10.

> The conditions of probation and of conditional discharge shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so.

*Id.* § 65.10(1); *People v. Myatt,* 248 A.D.2d 68, 71, 681 N.Y.S.2d 114 (3d Dep't 1998)(finding that conditions that are "necessary or appropriate to ameliorate the conduct which gave rise to the offense" are permissible); *People v. Howland,* 145 A.D.2d 866, 867, 536 N.Y.S.2d 191 (3d Dep't 1988)(finding that court has authority to impose probation conditions that are reasonably related to rehabilitation). Reasonable relationship may be the appropriate test when conditions of probation are challenged as outside those permitted by N.Y. Penal Law § 65.10. *See, e.g., Myatt,* 248 A.D.2d at 71, 681 N.Y.S.2d 114; *Howland,* 145 A.D.2d at 867–68, 536 N.Y.S.2d 191. Here, however, the condition of probation is challenged, not as impermissible under New York statutory law, but as depriving plaintiffs of the fundamental right of liberty in their family life as guaranteed by the United States Constitution.

■ The challenged probation condition interferes with plaintiffs' family living arrangements thus burdening a fundamental right. *See Lyng v. Castillo,* 477 U.S. 635, 639, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527 (1986). The United States Supreme Court recognizes that the interest of parents "in the companionship, care, custody, and management of" their children is "cognizable and substantial," even where the parents are not married. *Stanley v. Illinois,* 405 U.S. 645, 651–52, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *Santosky v. Kramer,* 455 U.S. 745, 753–54, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982)(noting that "parents retain a vital interest in preventing the irretrievable destruction of their family life"). A heightened level of scrutiny must therefore be applied. *See Zablocki v. Redhail,* 434 U.S. 374, 386–87, 98 S.Ct. 673, 681. There is no doubt that the state has a legitimate interest in promoting the rehabilitation of probationers. However, something more than a reasonable relationship to rehabilitation must be shown to justify such a complete impediment to plaintiffs' fundamental right

to family life. *See id.* at 388–90, 98 S.Ct. at 682–83.

Defendants propose two ways in which preventing Tremper and Johnson from consorting is related to Tremper's rehabilitation. Defendants first contend that the beginning of Tremper's criminal conduct coincided with her involvement with Johnson. However, Tremper obtained the handgun and illegally transported it into New York State before her association with Johnson. Second, defendants contend that because Johnson has a lengthy criminal record, association with him necessarily will lead to criminality on Tremper's part and prevent her rehabilitation. Such an association-leads-to-criminality theory is supported solely by the New York law that permits imposition of a condition of probation requiring refrain from association with disreputable persons. *See* N.Y. Penal Law § 65.10(2). While ordinarily a general prohibition on consorting with disreputable persons may be related to a probationer's rehabilitation, something more indicative that a specific association, in this case with Johnson, would tend to lead toward criminality is required when the prohibition infringes the fundamental right to family life. In fact, defendants attorney stated at oral argument that there is no evidence of Johnson having any undue influence over Tremper. In essence, the mere fact of Johnson's criminal history is what defendants are relying upon. This is insufficient to justify impeding a constitutional right.

Defendants rely upon two cases for the proposition that family rights can be infringed by conditions of probation. In both cases, however, a substantial showing of relationship between the condition imposed and the rehabilitation of the probationer or the victim's safety was made. Moreover, it is notable that the conditions were not challenged as infringing the constitutional rights of the probationer.

In *Myatt* the defendant was convicted, after a plea agreement, of sexual contact with a seven year old girl who lived near defendants' parents. 248 A.D.2d at 70–72, 681 N.Y.S.2d 114. There was evidence that the incident in question was not the first of its kind. *Id.* at 70, 681 N.Y.S.2d 114. Moreover, defendant made visual contact with the victim after his plea, alarming her, and showed no remorse for his crime. *Id.* at 72, 681 N.Y.S.2d 114. Based upon these circumstances, the appellate court found that the condition of probation prohibiting the defendant from going within ten miles of the victim's residence was not unduly harsh, unreasonable, or excessive. *Id.* This finding was made despite the fact that the defendant was a minor (who had been denied youthful offender status) and the probation condition would prevent him from living with his parents. *Id.* at 70–72, 681 N.Y.S.2d 114. The court found that the probation condition had rehabilitative purposes, protected public safety, and provided an alternative to the probationer's extended incarceration, and thus was permissible under § 65.10. *Id.* at 71–72, 681 N.Y.S.2d 114.

Similarly, in *Howland,* defendant and her husband were both indicted on numerous forgery and grand larceny charges. 145 A.D.2d at 866, 536 N.Y.S.2d 191. At the time she was eighteen years old, a high school dropout, and had two children with her husband. *Id.* A few months later defendant was indicted for promoting prison contraband, arising from her allegedly attempting to smuggle hacksaw blades to her husband in prison. *Id.* She pled guilty to a single charge in full satisfaction of all pending charges, and was sentenced to 5 years probation. *Id.* at 867, 536 N.Y.S.2d 191. One condition of her probation was that she not reside with the hus-

band upon his release from prison, without a court order. *Id.* Defendant violated this condition of probation, as well as the conditions requiring her to maintain gainful employment and not receive public assistance. *Id.* Upon her admission to these violations, probation was revoked and she was sentenced to six months imprisonment. *Id.* On appeal, the court found that the condition prohibiting cohabitation with her husband was reasonably related to her rehabilitation because her criminal activity began with her association with the husband. *Id.* at 868, 536 N.Y.S.2d 191. Further, her attempt to smuggle contraband into the prison demonstrated the husband's power over her. *Id.* Accordingly, the court found the probation condition reasonably related to her rehabilitation. *Id.*

Here, however, there has been no showing of undue influence, initiation of criminal conduct, need to protect the public safety, or reasonable alternative to incarcerating Tremper. Again, the purported showing of rehabilitative purpose consists merely of allegations regarding Johnson's past criminal record. Thus, an insufficient showing has been made that there is a rehabilitative purpose that would outweigh plaintiffs' liberty interest.

■ Plaintiffs therefore have established the likelihood of success on the merits. Defendants argue that pursuant to *Warner v. Orange County Dep't of Probation*, 115 F.3d 1068 (2d Cir.1996) only standard conditions of probation reflect a policy or practice of a county, required for county liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Thus, defendants argue, plaintiffs cannot show that it is a policy or practice of Ulster County to impose conditions of probation such as the one at issue here and cannot show success on the merits. While *Warner* did find that a standard condition of probation represented a policy or practice of the county, 115 F.3d at 1071, it does not foreclose a finding of policy or practice where nonstandard conditions are recommended. Thus, plaintiffs may have the opportunity to establish that recommending such a condition of probation was pursuant to a policy or practice of the Probation Department. Moreover, there are individual named defendants who may be held liable without the policy or practice showing required by *Monell.*

■ Defendants further rely upon *Warner* for the proposition that it was not foreseeable that the sentencing judge would rely upon the Probation Department's recommendation, breaking the chain of causation. *See* 115 F.3d at 1072. In *Warner*, the court rejected such an argument, finding it foreseeable that the judge would follow the probation department's recommendation, as sentencing judges rely heavily upon the advice of the probation department. *Id.* at 1072–73. Defendants' argument relies upon the fact that the sentencing judge in this case rejected the Probation Department's recommendation to incarcerate Tremper and instead sentenced her to interim probation. However, the argument ignores the fact that the sentencing judge actually followed the recommendation of the Probation Department to the extent that he imposed the recommended conditions. Additionally, the argument ignores the fact that, as the *Warner* Court found, sentencing judges generally heavily rely upon probation departments' advise and recommendations, *id.* at 1072–73. The mere fact that the sentencing judge rejected a portion of the Probation Department's recommendation is insufficient to remove it from the general rule of *Warner* that it is foreseeable that a sentencing judge will rely upon a probation department's recommendation, thus maintaining the chain of causation.

Finally, defendants argue that under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), plaintiffs' failure to exhaust state remedies should preclude hearing in this forum. The *Younger* Doctrine instructs federal courts to abstain from staying or enjoining pending state court criminal prosecutions absent special circumstances. *Id.* at 41, 91 S.Ct. at 749. *Younger* requires abstention from interference in state prosecutions, rather than, as defendants suggest, exhaustion of state remedies. *See id.* at 54 n. *, 91 S.Ct. at 756 n. * (Brennan, J., concurring)(explaining that although federal jurisdiction attaches when a constitutional claim arises, the proper avenue for relief is through direct review of the criminal conviction). Here, the plaintiffs challenge one specific condition of Tremper's probation, not the general constitutionality of the criminal prosecution. Enjoining defendants from enforcing the challenged condition of probation will not in any way effect the criminal prosecution. Under the circumstances of this case it is appropriate to exercise federal jurisdiction over plaintiffs' constitutional claims.

## IV. *CONCLUSION*

Plaintiffs have established that they will suffer irreparable harm should an injunction not issue. Further, they have established a likelihood of success on the merits of their constitutional claims, thus meeting the requirements for preliminary injunctive relief.

Accordingly, it is ORDERED that

1. Plaintiffs' motion for a preliminary injunction is GRANTED; and

2. A separate Preliminary Injunction Order shall be issued.

IT IS SO ORDERED.